# In the United States Court of Federal Claims

No. 21-2340 C

Filed Under Seal: August 30, 2022

Reissued: September 12, 2022[*]

```
* * * * * * * * * * * * * * * * * *** *
                                       *
ACI TECHNOLOGIES, INC.,                *
                                       *
                  Plaintiff,           *
                                       *
       v.                              *
                                       *
THE UNITED STATES,                     *
                                       *
                  Defendant,           *
                                       *
and                                    *
                                       *
THE PENNSYLVANIA STATE                 *
UNIVERSITY,                            *
                                       *
                  Defendant-Intervenor.*
                                       *
                                       *
* * * * * * * * * * * * * * * * * *** *
```

*Jonathan D. Shaffer*, with whom was *Todd M. Garland*, Smith Pachter McWhorter PLC, of Tysons Corner, VA, for Plaintiff.

*Steven M. Mager*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Eric P. Bruskin*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brian M. Boynton*, Principal Deputy Assistant Attorney General, all of Washington, D.C., for Defendant, and *Stephanie J. Quade*, Assistant Counsel, Office of Naval Research, Office of Counsel, U.S. Department of the Navy, of Arlington, VA, of counsel.

*Robert Charles Rutherford Jr*, Office of General Counsel, The Pennsylvania State University, of State College, PA, for Defendant-Intervenor.

---

[*] Pursuant to the protective order entered in this case, this opinion was filed initially under seal. The parties provided proposed redactions of confidential or proprietary information. In addition, the Court made minor typographical and stylistic corrections.

## MEMORANDUM OPINION AND ORDER

**SOMERS,** Judge.

On June 10, 2022, the Court granted judgment on the administrative record in favor of the United States in the instant bid protest. ECF No. 35;[1] *see also ACI Techs., Inc. v. United States*, No. 21-2340 C, 2022 WL 2339489 (Fed. Cl. June 21, 2022). Shortly thereafter, Plaintiff filed a notice of appeal. ECF No. 38. Pending now before the Court is Plaintiff's motion for a stay or injunction pending appeal. ECF No. 41 ("Pl.'s Mot. to Stay"). The Court has determined that oral argument on the motion is unnecessary, particularly given Plaintiff's request for expedited consideration. Because Plaintiff fails to meet the standard for the extraordinary relief it requests, the Court denies Plaintiff's motion.

## BACKGROUND AND PROCEDURAL HISTORY

The facts of this case are fully detailed in the Court's opinion of June 21, 2022. *See ACI Techs., Inc.*, 2022 WL 2339489. However, for context, the Court will briefly summarize the facts and procedural history of this protest.

On April 20, 2020, the Navy issued a request for proposal ("RFP") seeking proposals for the "management, administration and technical oversight of the Navy Manufacturing Technology (ManTech) Electronics Manufacturing Center." AR 313. The ManTech Center of Excellence ("COE") for electronics manufacturing is one of seven ManTech COEs, which "serve as focal points for the development and technology transfer of new and advanced manufacturing processes and technology in a cooperative environment with industry, academia, and the Naval Research Enterprise." AR 304. Plaintiff served as the contractor for the ManTech COE since its inception in 1995. *See* ECF No. 23 at 2 ("Pl.'s MJAR").

Two offerors—Plaintiff and Defendant-Intervenor, the Pennsylvania State University ("PSU")—submitted proposals in response to the RFP. *See generally* AR Tabs 19–20. After evaluating the proposals, the Navy decided to award the contract to Defendant-Intervenor. AR 1933. Thereafter, on September 3, 2021, Plaintiff filed a protest at the Government Accountability Office ("GAO") challenging the award to PSU. *See generally* AR Tab 60. GAO, however, found no prejudicial error in any of the assigned technical ratings, nor in the Navy's overall evaluation. *See ACI Technologies, Inc.*, B-420129.1, 2021 WL 6050173 (Comp. Gen. Dec. 10, 2021). Plaintiff then filed a protest in this Court on December 29, 2021. *See* ECF No. 1 ("Compl.").

In its protest, Plaintiff asserted that the Navy failed to properly evaluate Factor 7, Past Performance; failed to reasonably evaluate Factor 8, Price/Cost; unreasonably evaluated Technical Factors 1–3; and failed to conduct a proper tradeoff analysis and best value

---

[1] On June 10, 2022, the Court denied Plaintiff's motion for judgment on the administrative record and granted the government's cross-motion, but the Court stayed the entry of judgment until it released its written opinion on June 21, 2022, which directed the Clerk to enter final judgment.

determination.  *See* Compl. ¶¶ 191–202; *see generally* Pl.'s MJAR.  In addition, Plaintiff alleged that in relying on erroneous evaluations, the source selection authority's ("SSA") best value and tradeoff analysis was inherently flawed, Compl. ¶¶ 203–05, and that "[i]f the Navy had made its determinations consistent with the RFP, FAR and CICA, the Navy would have awarded the contract to ACI," *id.* ¶ 205.  The government cross-moved for judgment on the administrative record.  *See* ECF No. 26.

On April 27, 2022, the Court held oral argument on the motions, and on June 10, 2022, the Court denied Plaintiff's motion and granted judgment on the administrative record in favor of the United States.  *See ACI Techs., Inc. v. United States*, 2022 WL 2339489.  In denying Plaintiff's motion, the Court held that Plaintiff had not established that the Navy unreasonably evaluated proposals under Factor 7 (Past Performance), Factor 8 (Cost/Price), or Technical Factors 1–3, and that Plaintiff had not established that the Navy erred in its tradeoff analysis and best value determinations.  *See generally id.*

Plaintiff now moves for injunctive relief pending its appeal of the Court's decision before the Federal Circuit.

**DISCUSSION**

**A.     Legal Standard**

Rule 62(d) of the Rules of the United States Court of Federal Claims ("RCFC") provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  RCFC 62(d).  Such relief, however, "is an 'extraordinary and drastic remedy,' which is not granted lightly."  *G4S Secure Integration LLC v. United States*, 159 Fed. Cl. 249, 254–55 (2022) (quoting *Telos Corp. v. United States*, 129 Fed. Cl. 573, 575 (2016)); *see also RLB Contracting, Inc. v. United States*, 120 Fed. Cl. 681, 682 (2015) ("An injunction pending appeal is an extraordinary remedy and will not be lightly granted.").  The party moving for a stay "carries the burden of establishing the propriety of an injunction pending appeal . . . ."  *Telos Corp.*, 129 Fed. Cl. at 575; *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (characterizing the issuance of a preliminary injunction as "an extraordinary remedy that may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief") (emphasis added).

"It is well established that the Court considers four factors in determining whether the extraordinary measure of staying performance pending an appeal is appropriate."  *JWK Int'l Corp. v. United States*, 49 Fed. Cl. 364, 366 (2001), *aff'd*, 279 F.3d 985 (Fed. Cir. 2002) (citing cases).  These factors are:

> (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other interested parties; and (4) where the public interest lies.

*Telos Corp.*, 129 Fed. Cl. at 575 (citing *Akima Intra-Data, LLC v. United States*, 120 Fed. Cl. 25, 27–28 (2015) (citing *Standard Havens Prod., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990))). In applying these factors, because "the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987). Rather, "[i]n considering whether to grant a stay pending appeal, [the Court must] assess[] [a] movant's chances for success on appeal and weigh[] the equities as they affect the parties and the public." *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987).

Therefore, "[w]hen harm to [a movant] is great enough, a court will not require 'a strong showing' that [the movant] is 'likely to succeed on the merits.'" *Standard Havens Prod., Inc.*, 897 F.2d at 513 (quoting *Hilton*, 481 U.S. 776). Instead, courts have "recognized a flexible application of these factors," such that "an injunction is possible even when success on the merits is not probable, but this requires a 'substantial case on the merits' . . . ." *Telos Corp.*, 129 Fed. Cl. at 575 (2016) (quoting *Akima Intra-Data, LLC*, 120 Fed. Cl. at 28 (quoting *Standard Havens Prod., Inc.*, 897 F.2d at 513)). "Thus, a stay pending appeal may be appropriate even when the moving party has not shown that it is likely to succeed on the merits *if the moving party has demonstrated a substantial case on the merits, and the other factors tilt decidedly toward the moving party*." *G4S Secure Integration LLC*, 159 Fed. Cl. at 255 (citing *Telos Corp.*, 129 Fed. Cl. at 575) (emphasis added); *see also JWK Int'l Corp.*, 49 Fed. Cl. at 366 ("The stronger the showing of likelihood of success on the merits, the less heavily the balance of harms need tip in [the movant's] favor. Conversely, if the harm factors weigh heavily in [the movant's] favor, [the movant] only needs to demonstrate a substantial case on the merits.").

This lesser showing of "a substantial case," however, is no free ride. Rather, in order to demonstrate that a substantial case on the merits exists, the moving party must show that "the question raised is novel or close," *Acrow Corp. of Am. v. United States*, 97 Fed. Cl. 182, 184 (2011), or that "the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." *Standard Havens Prod., Inc.*, 897 F.2d at 513 (internal quotations omitted).

B.   Analysis

As explained below, Plaintiff is not entitled to the extraordinary relief it requests, having demonstrated neither a likelihood of success on appeal nor a substantial case on the merits on appeal. Moreover, Plaintiff has further failed to demonstrate that the other factors decidedly tilt in its favor.

### 1. Likelihood of Success/Substantial Case on the Merits

To reiterate, the first factor the Court must consider when a party seeks a stay pending appeal is whether the movant has either made a strong showing that it is likely to succeed on the merits on appeal or, alternatively, if the other injunctive relief factors tilt decidedly in its favor, that it has demonstrated a substantial case on the merits. Although Plaintiff makes a few passing

references to its likely success on the merits,[2] it appears that Plaintiff concedes for purposes of its motion the likelihood of success argument, as its motion focuses solely on demonstrating that it has a substantial case on appeal. Accordingly, as Plaintiff does not argue, except in passing, that it is likely to succeed on the merits, the Court will analyze Plaintiff's motion to determine whether Plaintiff has met its burden to demonstrate that it has a substantial case on appeal.[3]

In support of this factor in the injunctive relief test, Plaintiff contends that: 1) the Court erred by applying a "more stringent" standard for prejudice than was appropriate; 2) the Court erred by failing to address unreasonable aspects of the Navy's best value analysis; 3) the Navy's past performance evaluation and resulting best value analysis were unreasonable; 4) the Navy's cost evaluation and resulting best value analysis were unreasonable because of its use of substituted Provisional Billing Rates and the Navy's alleged ignoring of PSU start-up costs; and 5) the Navy's evaluation under Technical Factor 1 was unreasonable. Upon review, the Court finds none of Plaintiff's arguments convincing.

First (and somewhat curiously because the Court's prejudice analysis was not essential to its decision), Plaintiff asserts that it has a substantial case on the merits because the Court erred by applying a "more stringent" standard for prejudice than was appropriate. *See* Pl.'s Mot. to Stay at 10–14. Plaintiff alleges that "[t]he Opinion's *application* of a more stringent standard is especially prejudicial in this best-value procurement where the non-price factors are more important than the price." *Id.* at 10 (emphasis added). Yet, while the Court discussed Plaintiff's failure to articulate sufficiently how it was prejudiced by any of the *individual* errors the Navy allegedly committed, because Plaintiff failed to prove to the Court that the Navy committed any errors whatsoever, the Court's discussion regarding prejudice was not necessary to the outcome of the decision. *See, e.g.*, *ACI Techs., Inc.*, 2022 WL 2339489, at *1 ("Plaintiff . . . failed to meet its burden to establish that it is entitled to judgment because the Navy reasonably evaluated proposals under all of Plaintiff's challenged factors and did not err in its tradeoff analysis and best value determination.").

---

[2] For instance, the table of contents in Plaintiff's motion identifies section "III" as "ACI Has Demonstrated a Substantial Case on Appeal." Pl.'s Mot. to Stay at i. None of the other headings in Plaintiff's motion suggest an argument as to Plaintiff's likelihood of success on the merits. Thereafter, and early in its motion, Plaintiff briefly asserts that "ACI has shown likelihood of success on the merits of an appeal," *id.* at 4—and it correctly articulates the "likelihood" factor, *id.* at 5 (citing *JWK Int'l Corp.*, 49 Fed. Cl. at 366)—yet Plaintiff then proceeds to argue only how "ACI Has Demonstrated a Substantial Case on Appeal," *id.* at 10–28. In short, there is no "likely to succeed" section in Plaintiff's motion to stay the judgment. This is, of course, not surprising as it is unlikely that the Court—having just ruled that Plaintiff was unsuccessful on the merits—would find that Plaintiff is likely to succeed on the merits on appeal. *See Telos Corp.*, 129 Fed. Cl. at 575 ("As should be expected, the Court does not find it likely that the Federal Circuit will rule in plaintiff's favor on any of these grounds, for plaintiff would have prevailed here were that the case.").

[3] To the extent that Plaintiff did attempt to argue that it has a likelihood of success on appeal, that argument fails for the reasons outlined in the Court's merits opinion and the below discussion of its failure to demonstrate that it has a substantial case on appeal.

Plaintiff is surely aware that "[o]n the merits of a bid protest, it is not enough to show that an agency has stepped out of bounds; rather, a protestor must *further* show that the offending agency's conduct prejudiced it." *Ascendant Servs., LLC v. United States*, No. 22-72 C, 2022 WL 2063327, at *8 (Fed. Cl. May 16, 2022) (citing *CW Gov't Travel, Inc. v. United States*, 154 Fed. Cl. 721, 736 (2021)) (emphasis added); *see also Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021) ("We hold that there is no presumption of prejudice *when a protestor demonstrates irrationality* in an agency decision.") (emphasis added). Here, however, Plaintiff did not show that the agency stepped out of bounds; thus, although it is true that the Court discusses what it viewed as Plaintiff's additional failure to demonstrate prejudice with regard to any of the individual areas for which it claimed the agency erred, that discussion was not essential to the Court's decision. Therefore, the Court could not have committed reversable error on prejudice on the merits, because Plaintiff failed to establish that the Navy acted unreasonably in the first place.

The Court's discussion of prejudice in its merits opinion simply articulates that *had* Plaintiff established agency errors—which it did not—Plaintiff offered little to nothing for the Court to weigh when reaching what *would* have been the further step of determining prejudice. *See, e.g.*, *ACI Techs., Inc.*, 2022 WL 2339489, at *25 ("It is not enough for Plaintiff to claim that '[h]ad the Navy rationally evaluated the technical proposals, ACI's superior proposal would have been considered during the tradeoff analysis and best value determination, and ACI would have received award.' Unless, of course, Plaintiff believes it needed to succeed on *every* alleged error in the agency's evaluations of the two proposals under Factors 1–3—which the Court has already found is not established by the record." (citation omitted)).

Plaintiff's assertion that the Court misapplied the standard for prejudice is incorrect in any event. First, the Court did not say that Plaintiff would not have been prejudiced if it were successful in *all* of its arguments regarding agency error. The Court acknowledged in its standing analysis that collectively the errors alleged by Plaintiff would indeed be prejudicial if proved:

> The Court finds—and the government did not contest—that Plaintiff has standing to pursue the instant protest. Plaintiff was an offeror and, in fact, the only other offeror in the challenged procurement, and were Plaintiff successful on all grounds raised in its protest—finding error in the Navy's past performance evaluation of PSU, cost evaluations, technical factors evaluation, and tradeoff analysis—there is sufficient reason to conclude that Plaintiff stood a substantial chance of receiving the contract.

*ACI Techs., Inc.*, 2022 WL 2339489, at *8. The Court also did not say that Plaintiff could not have been prejudiced by any of the individual errors it alleged. Rather, the Court explained that, when taken individually (versus when considered together collectively), *even if* Plaintiff had successfully proved the Navy erred, Plaintiff failed to offer a coherent argument to demonstrate that any error standing alone prejudiced it.

Moreover, Plaintiff's own briefing—at the MJAR stage and in its motion for a stay—suggests that it is in fact Plaintiff, not the Court, that applies an erroneous prejudice standard.

6

*See* ECF No. 50 at 9 ("Gov.'s Resp. to Mot. to Stay") ("ACI ignores the fact that it has the burden of demonstrating prejudice, and instead seems to argue that where a best value trade off can be contemplated, prejudice may be presumed because every qualitative factor *could* impact the agency's decision."). For instance, Plaintiff argues that each of the agency's alleged errors "would have affected" the best value tradeoff analysis but offers little to nothing else. *See, e.g.*, Pl.'s Mot. to Stay at 11. Apparently, according to Plaintiff, no explanation of *why* this is prejudicial is needed; the conclusory statement alone suffices. To illustrate, Plaintiff asserts, for example, that "the cost issues identified by ACI are *independently* prejudicial because they would have affected the trade-off by reducing or eliminating PSU's cost advantage." *Id*. (citing "ACI MJAR at 44; ACI Reply at 11-12, 31") (emphasis added). Maybe under the facts of some bid protests that statement alone would suffice, but here the SSA determined that "even if [she] had not sought out the most recent rates for each offeror [her] award decision would remain the same [because] . . . the ACI key personnel and staffing approach [are not] worth any premium." AR 1921. Thus, more argument than a conclusory sentence would have been required on the merits (had Plaintiff proved the agency erred in the first place) to get Plaintiff over the prejudice hurdle.

It seems that Plaintiff's idea of the standard for prejudice on the merits is nothing "more stringent" than: if error, then prejudice. *See, e.g.*, Pl.'s MJAR at 10 ("In this best value procurement, the SSA awarded based on materially flawed assumptions that PSU's technical proposal was stronger than ACI's, PSU's price was materially lower, and ACI and PSU had equivalent past performance. If any one of those assumptions is flawed, then the SSA would have to conduct a new best value analysis in which ACI has a substantial chance for award."); *see also* ECF No. 28 at 5 ("Pl.'s Reply") ("If any one of those assumptions is flawed, then the SSA would have to conduct a new best value analysis in which ACI has a substantial chance for award."). That, however, is not the law. A plaintiff has the burden to prove prejudice and thus must offer an actual prejudice argument for all but the most self-obvious propositions (e.g., if the proved agency error would have made a presumptive awardee ineligible for award and the protestor was next in line for award, the prejudice is usually self-obvious).

In support of its rather toothless formulation of the prejudice standard, Plaintiff repeatedly cites in support[4] Judge Sweeney's observation in *FFL Pro LLC v. United States* that "a different evaluation under [past performance] might affect the results of the contracting officer's best value tradeoff analysis and, therefore, the award of the contract." 124 Fed. Cl. 536, 561 (2015). Plaintiff, however, noticeably and consistently omits Judge Sweeney's very next sentence: "*Moreover*, this error is prejudicial to plaintiff." *Id.* (emphasis added). Judge Sweeney proceeded to explain in detail why, *under the facts of that procurement*, a change in one specific factor's evaluation created a "substantial chance" for award to the plaintiff, and, therefore, the plaintiff satisfied the prejudice standard. In other words, and contrary to Plaintiff's misread, Judge Sweeney did not hold that a plaintiff is *always prejudiced* simply because "a different evaluation" under any given factor "might affect the results" of the award determination. And Plaintiff offers no Federal Circuit case adopting a "might affect the results" articulation of prejudice. *But see Sys. Stud. & Simulation, Inc.*, 22 F.4th at 998 ("We hold that there is no presumption of prejudice when a protestor demonstrates irrationality in an agency

---

[4] *See* Pl.'s MJAR at 10; Pl.'s Reply at 5; Pl.'s Mot. to Stay at 15.

7

decision. The protestor must show prejudice under the usual standard."). Rather, it very much remains the law in a bid protest that "a protester must *show* 'that the error prejudiced it.'" *FFL Pro LLC*, 124 Fed. Cl. at 551 (quoting *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996)) (emphasis added).

Turning to Plaintiff's second through fifth arguments as to why it has a substantial case on the merits, the Court reads Plaintiff's contentions as nothing more than a reiterated disagreement with the Navy's evaluation and ultimate decision in the contested procurement. The Court sees nothing that demonstrates "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." *Standard Havens Prod., Inc.*, 897 F.2d at 513 (internal quotations omitted). As government counsel aptly put it during oral argument, "this case is about as textbook a case as I've seen recently of . . . the protester quibbling with the lawful discretion exercised by the agency." ECF No. 34 at 60:18–22. Plaintiff's motion simply reiterates those quibbles and adds some additional ones regarding the Court's opinion. Such does not a substantial case make.

Mere allegations of agency (or Court) error alone do not satisfy the "substantial case" standard, or at least the version of the standard repeatedly applied by judges of this Court. *See, e.g.*, *Swift & Staley Inc.*, 159 Fed. Cl. at 734 ("[Plaintiff] has presented a substantial case on the merits *because* the meaning of 'raised' in the context of § 134.316(c) *is an issue of first impression* that provides fair ground for [Plaintiff's] appeal.") (emphasis added); *G4S Secure Integration LLC*, 159 Fed. Cl. at 262 ("[P]laintiffs have not demonstrated that they are raising *a substantial and novel question of law*. Accordingly, the plaintiffs have not prevailed on the first factor for an injunction pending appeal.") (emphasis added); *Akima Intra-Data, LLC*, 120 Fed. Cl. at 28 ("The court recognizes that *the legal issues presented are issues of first impression*. Thus, while the court rejected plaintiff's arguments, it is not possible to determine the likelihood of success on appeal. An issue of first impression weighs in favor of finding a 'substantial case on the merits,' though not decisively.") (emphasis added).

Nothing about the instant protest—or the pending motion to stay—raises a "substantial and novel question or law" or an "issue of first impression." Frankly, the Court did not tread new ground here. Plaintiff's routine bid protest objected to the manner in which the Navy evaluated its proposal and, ergo, the Navy's award of the contract to PSU. The Court determined after a careful review of the record that Plaintiff was unable to prove that its allegations of error were supported by the administrative record. The questions before the Court were neither "novel [n]or close." *Acrow Corp. of Am.*, 97 Fed. Cl. at 184. Now, in moving for a stay of that determination, Plaintiff simply reiterates its objections to the SSA's decision and the Court's denial of judgment on the administrative record in Plaintiff's favor—a far cry from demonstrating a "substantial case" on appeal.

Only belatedly, in its reply brief supporting its motion to stay, does Plaintiff mention—in what seems to be a throwaway argument—that "*[i]n any event*, the issue of prejudice here is an issue of first impression; caselaw does not clearly define 'substantial chance for award' in the context of best-value determinations." ECF No. 52 at 4 ("Pl.'s Stay Reply") (emphasis added). But, as the Court already made clear above, the issue of prejudice was not central to the Court's denial of Plaintiff's motion for judgment on the administrative record. Had the Court determined

8

that the agency, in fact, committed errors in its evaluation and source selection decision, and had the Court then determined that Plaintiff was nevertheless not prejudiced by such errors, Plaintiff would perhaps present a more compelling "substantial case" argument.[5]  But those are not the facts here.  Plaintiff established no agency error in its motion for judgment on the administrative record; therefore, Plaintiff cannot obtain a stay of that judgment based on the Court's alleged misapplication of prejudice law.

In sum, Plaintiff fails to establish either a likelihood of success on the merits on appeal or a substantial case on appeal.

### 2.  Irreparable Harm

Although Plaintiff has failed to meet its burden to establish a substantial case on appeal, the Court will nonetheless examine the remaining injunctive relief factors.  With regard to irreparable harm, the Court need not summarize Plaintiff's argument; rather, it can simply quote the mere six-sentence long, largely conclusory, and repetitive argument verbatim:

> A stay pending appeal or preliminary injunction will prevent irreparable harm to ACI, maintain the status quo, and allow the Federal Circuit to review the case and make a decision without restricting ACI's remedy or causing irreparable harm to ACI and its employees.
>
> ACI will be irreparably harmed if the Court does not grant a stay or preliminary injunction pending ACI's appeal.  ACI has been the incumbent contractor since 1995 and the incumbent contract represents the overwhelming majority of ACI's work (approximately ▮% of recent revenue).  Among other things, the loss of the contract will force ACI to layoff approximately ▮% of its workforce, causing irreparable harm to ACI's employees and their families and to ACI.
>
> ACI has no adequate remedy, absent injunctive relief.  Because the law does not allow for recovery of lost profits here, only an injunction enforcing the judgment can provide an adequate remedy.
>
> Economic harm is a recognized form of irreparable harm.

Pl.'s Mot. to Stay at 8–9 (citations omitted).

---

[5] That said, the Court does not grant that Plaintiff raises even a hypothetical issue of first impression.  Plaintiff cites no caselaw or conflicting outcomes from this Court in support of its proposition that "caselaw does not clearly define 'substantial chance for award' in the context of best-value determinations."  Pl.'s Stay Reply at 4.  It seems, rather, that Plaintiff in its reply brief is just inventing a gap in the law in an attempt to backfill its lack of "substantial case" arguments in its motion for a stay.  *See, e.g., G4S Secure Integration LLC*, 159 Fed. Cl. at 262 ("[P]laintiffs have not demonstrated that they are raising a *substantial and novel* question of law.") (emphasis added).

Although the above appears to be a solid introduction to an irreparable harm argument, it leaves the Court to wonder where the actual argument is. Like many of Plaintiff's arguments in this litigation, Plaintiff's irreparable harm argument makes assertions but does not follow through with the argument. Plaintiff's whole "argument" essentially consists of two conclusory sentences stating that (1) the contract represents the overwhelming majority of Plaintiff's work, and (2) the loss of the contract will force ACI to lay off ▮ percent of its workforce. Certainly, each of these alleged harms could constitute an irreparable harm, but Plaintiff offers no explanation for how either assertion will actually affect it and how any alleged effects will be irreparable. The Court cannot simply assume without more from Plaintiff that either of these alleged harms constitutes an *irreparable* harm. This is especially true given that the "irreparable injury requirement erects a very high bar for a movant," *Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the United States*, 840 F. Supp. 2d 327, 334 (D.D.C. 2012) (citation omitted), the "injury must be both certain and great," *Wis. Gas Co. v. Fed. Energy Reg. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985), and the movant must demonstrate that the alleged hardship "has an immediate and substantial impact," *Sys. Appl'n & Techs., Inc. v. United States*, 691 F.3d 1374, 1385 (Fed. Cir. 2012) (internal quotations and citation omitted). Plaintiff's bald assertion of harm simply does not meet these standards.

What is more, even though a ▮ percent loss of recent revenue or being forced to lay off ▮ percent of a workforce may sound like textbook irreparable harms, it is also possible that in Plaintiff's case they are not and thus Plaintiff needed to explain in its motion and supporting declarations how these alleged harms would *actually* (or at least presumably) affect it. For instance, laying off ▮ percent of its workforce could be irreparable, but it could also be the case that the loss of the workforce will not affect Plaintiff's ability to compete for new business because the lost staff could readily be rehired or replaced when new business emerges. Plaintiff, however, provided the Court with no information from which to assess the alleged harm—e.g., the Court has no information regarding which segment of Plaintiff's workforce will be laid off, what impact this will have on Plaintiff's viability or its ability to compete for future work, or even how difficult replacing this workforce would be in the future if needed. In short, Plaintiff does not offer much by way of explanation of the alleged irreparable harm; instead, the Court would be forced to make unsupported inferences in order to find in Plaintiff's favor on this factor.

Furthermore, by failing to provide any explanation of the alleged irreparable harms, the Court is left to wonder how the alleged harms are even consistent with one another. On the one hand, Plaintiff states (in a different section of its brief from its irreparable harm argument) that the ▮ percent loss of revenue that it will suffer because of the loss of the contract will cause it to "cease to exist." However, on the other hand, Plaintiff states that the loss of the contract will cause it to have to lay off ▮ percent of its workforce. But how can it be that a company that has ceased to exist only has to lay off ▮ percent of its workforce? Stated differently, by presenting an overly succinct irreparable harm argument, Plaintiff has failed to provide any explanation, to the extent it exists, for the inconsistency between the two harms it claims.

In addition, to the extent that Plaintiff does explain in more detail its alleged irreparable harm in its supplemental declaration, it does not appear that it is the denial of an injunction that will cause the alleged harm. Rather, it appears that it is the loss of two task orders issued under

10

the previous contract that is causing Plaintiff the alleged harm. *See, e.g.*, ECF No. 52-1 ¶ 4 ("But for the now planned cancellation of the two ACI ONR projects, ACI's revenue during the next six months attributable to the incumbent contract would remain in the ▇% range."). As Plaintiff's President and Chief Executive Officer explains in a declaration in support of its motion,

> while ACI had been operating under the assumption that the remaining active projects would be executed up to their organic end date--*which provided time margin for ACI to refocus their business towards alternate opportunities*--ACI was instead abruptly given less than a month to suddenly cease all ManTech work, *which gave ACI no reasonable time to refocus their business toward other viable avenues*. Since Navy ManTech represents the overwhelming majority of work that ACI performs, <u>this</u> *was a highly damaging action by ONR that clearly jeopardizes ACI's future business viability*.

*Id.* ¶ 7 (emphasis added). In short, Plaintiff's President and CEO is stating that it is the cancellation of the remaining active projects that is "a highly damaging action" that "clearly jeopardizes [Plaintiff's] future business viability." Although the Court in this protest can, if warranted, issue an injunction to stop any irreparable harm related to the Navy's decision to award the protested contract to PSU, it cannot enjoin the Navy from terminating two task orders from a previous contract that are not before the Court.

Finally, from the briefing on this issue and the declarations presented by both Plaintiff and the government, Plaintiff has not demonstrated, even if the Court were to assume the alleged harms are irreparable harms, that it is the award of the contract to PSU (or the failure to enjoin that award) that would actually cause the injuries Plaintiff alleges. In sum, Plaintiff's chief argument is that "[p]ermitting PSU to significantly perform the protested contract while ACI's appeal to the Federal Circuit is pending would result in irreparable harm to ACI. Without a partial stay or preliminary injunction, ACI may cease to exist and, even if it prevails on appeal, may have no meaningful remedy." Pl.'s Mot. to Stay at 4. While it is true that other judges of this Court have awarded injunctive relief when a movant arguably stood to lose everything if an injunction was not granted and the award of the contract to the successful offeror went forward while an appeal was pending, *see, e.g., Swift & Staley Inc.*, 159 Fed. Cl. at 735, here Plaintiff has not established that enjoining the award to PSU during the pendency of the appeal will prevent the alleged harms.

Plaintiff's irreparable harm theory appears (although the Court cannot be certain because the argument, as pointed out above, is less than fully developed) to rest on the assumption that Plaintiff will continue to work on two task orders issued under the previous contract during the pendency of its appeal. *See, e.g.*, Pl.'s Mot. to Stay at 29 ("This situation can be avoided if this Court maintains the status quo pending appeal."); Pl.'s Stay Reply at 2 (arguing for a stay that "will permit the Navy to continue the two ACI task orders that were terminated for convenience solely due to the Court's June 10, 2022 Order and June 21, 2022 Opinion"). Yet, the government represents to the Court that there is no work anticipated for Plaintiff during the pendency of the appeal, regardless of whether the Court grants an injunction pending appeal.

*See* Gov.'s Resp. to Mot. to Stay at 5–6 ("[E]ven if ACI's declaration establishes that it would be harmed by the agency's failure to award it the underlying contract, *ACI fails to demonstrate that an injunction pending appeal will serve to remedy this situation*. The two remaining projects that ACI is performing under its prior contract will not be continued due to loss of transition support and funding, the contract ordering period for new tasks under ACI's IDIQ contract expired over one year ago, there are no options on the task order that provides for the continued management and operation of the EMC and previously ordered projects, and this same task order expires on July 25, 2022.") (emphasis added). In other words, according to the government, Plaintiff will not be doing any ManTech COE electronics manufacturing work for the Navy during the pendency of the appeal even if the Court temporarily enjoins the Navy from moving forward with its award to PSU.

In light of this apparent revelation, Plaintiff in its reply brief invites the Court to "require the Navy to provide evidence of the lack of requirements and funding for the ACI projects and any related technical review so that ACI personnel can respond or provide clarification." Pl.'s Stay Reply at 1–2. However, a motion for a stay of the judgment in this case is not the arena to litigate either the legitimacy of the reasoning or the legality behind the government's cancellation of task orders under a previous contract (a contract that is not even part of this protest) and to do so would also be jurisdictionally problematic. *See, e.g., Cotton & Co., LLP v. United States*, 133 Fed. Cl. 133, 137 (2017) ("[The agency's] decision to terminate Cotton for convenience is a matter of contract administration, and therefore falls under the CDA rather than this Court's bid protest jurisdiction. This Court cannot yet exercise jurisdiction under the CDA because it is undisputed that Cotton has not yet obtained a contracting officer's final decision on its claim.") (citation omitted); *Davis/HRGM Joint Venture v. United States*, 50 Fed. Cl. 539, 545 (2001) ("Plaintiff clearly challenges the termination of its contract. . . . Under the CDA, Plaintiff was required to file a claim with the contracting officer prior to filing suit in this Court. Because Plaintiff has not availed itself of this process, this Court lacks jurisdiction . . . .").

Thus, Plaintiff has not established that the grant of a stay pending appeal in the instant case would stem the source of Plaintiff's alleged irreparable harm. Rather, the harms Plaintiff alleges here would—under Plaintiff's own logic—materialize regardless of whether the Court grants the extraordinary relief Plaintiff requests. Therefore, it cannot be said that granting a stay will afford Plaintiff relief from its alleged injuries. *See* Gov.'s Resp. to Mot. to Stay at 7 ("With its projects terminated and no ordering period remaining, an injunction on the new contract with PSU pending appeal will not afford ACI any relief."). Plaintiff needs not a stay of the Court's judgment but rather a guaranteed source of revenue during the pendency of the appeal that, according to the government, does not exist whether or not a stay is granted. As the government correctly identifies, "'[n]o federal contractor has a right to maintain its incumbency in perpetuity,' and 'the potential loss of the benefits of incumbency does not give [a bid protest] plaintiff some sort of automatic right to a stay pending appeal.'" Gov.'s Resp. to Mot. to Stay at 8 (quoting *Akima Intra-Data, LLC*, 120 Fed. Cl. at 28 (quoting *CRAssociates, Inc. v. United States*, 103 Fed. Cl. 23, 26 (2012))). Absent more, Plaintiff has not established that the Court's denial of a stay pending appeal would cause Plaintiff irreparable harm.

### 3. Injury to Other Parties

As Plaintiff has established neither a "substantial case" on the merits nor irreparable harm, the Court only briefly addresses the potential injury to other parties—a factor that weighs in favor of the government.[6] In its response to Plaintiff's motion, the government represents that "[t]he Navy ManTech EMC COE has not been able to execute its mission since the beginning of this protest (i.e., September 3, 2021)," and "[c]onsequently, the program has not been able to properly fulfill its primary mission in the electronics area of reducing the cost of Navy acquisition programs," or "fulfill[] its secondary priority of accelerating electronics capability to the warfighter by developing more cost-effective manufacturing for those new capabilities." Gov.'s Resp. to Mot. to Stay at 15 (citing declaration of Neil Graf, Navy ManTech Program Manager, Office of Naval Research). Under this factor, Plaintiff protests, once again, that it may "cease to exist" absent a stay of the judgment. Pl.'s Mot. to Stay at 28. For the reasons articulated above, the Court finds Plaintiff's argument unpersuasive. Thus, the Court finds that further delay of the performance of the instant contract, the award of which Plaintiff did not establish was in error, would "substantially injure the other interested parties" in this procurement. *Telos Corp.*, 129 Fed. Cl. at 575 (quoting *Akima Intra-Data, LLC*, 120 Fed. Cl. at 27–28).

### 4. Public Interest

Finally, the Court finds that the public interest weighs in favor of the government. The government correctly notes that "[t]he Court (and GAO) has already reviewed the agency's procurement decision on the merits and there is no reason to prevent the agency from moving forward." Gov.'s Resp. to Mot. to Stay at 15. Plaintiff, on the other hand, argues only that it was "improperly excluded" from what should otherwise have been an honest, open, and fair procurement. Pl.'s Mot. to Stay at 29 (quoting *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 266, 269 (1997)). Plaintiff did not establish error in the Navy's evaluation and award in the instant procurement, and it has articulated no other convincing public interest ground that might weigh in favor of a stay. Therefore, the Court finds that the public interest—as with the other non-merits factors—does not tilt in Plaintiff's favor. *See also JWK Int'l Corp.*, 49 Fed. Cl. at 366 (articulating the public interest factor as "a showing that *no harm* will be inflicted upon the public interest") (emphasis added).

### CONCLUSION

For the reasons set forth above, Plaintiff fails to meet its burden to make a strong showing of a likelihood of success on appeal or to demonstrate a substantial case on appeal. Moreover, Plaintiff fails to establish that it will be irreparably harmed or that the remaining injunctive relief factors tilt in its favor. Accordingly, the Court **DENIES** Plaintiff's motion for a stay of the judgment entered or a preliminary injunction pending Plaintiff's appeal.

---

[6] The Court does not speculate as to the harms to PSU of a stay in the instant action. PSU, as was its right, chose not to submit responsive briefing on Plaintiff's motion for a stay (nor did it file briefs on the cross-motions for judgment on the administrative record).

**IT IS SO ORDERED.**

                                      <u>s/ Zachary N. Somers</u>
                                      ZACHARY N. SOMERS
                                      Judge